IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: )
)   Case No. 10-18071
COLTS RUN, L.L.C., )   Chapter 11
an Illinois Limited Liability Company, )   Judge Hollis
)
Debtor/Debtor-in-Possession. )

## DEBTOR'S PLAN OF REORGANIZATION

**DEBTOR'S COUNSEL**:
David K. Welch, Esq.
(Atty. No. 06183621)
Arthur G. Simon, Esq.
(Atty. No. 03124481)
Scott R. Clar, Esq.
(Atty. No. 06183741)
Jeffrey C. Dan, Esq.
(Atty. No. 06242750)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777
FAX: (312) 641-7114
W:\GRACE\Colts\Plan.wpd

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 10-18071 |
| COLTS RUN, L.L.C., | ) | Chapter 11 |
| an Illinois Limited Liability Company, | ) | Judge Hollis |
| | ) | |
| Debtor/Debtor-in-Possession. | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

COLTS RUN, L.L.C., a Illinois limited liability company, Debtor/Debtor-in-Possession herein, by and through its Attorneys, proposes the following Plan of Reorganization ("Plan") in accordance with Section 1121(a) of the Bankruptcy Code.

## PREAMBLE

On April 23, 2010, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). The Debtor is operating its business and managing its financial affairs as Debtor in Possession pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case. The Debtor is the owner of a residential apartment complex in Lexington, Kentucky known as "Colts Run Apartments."

The Plan is filed within the exclusive periods established under Sections 1121(b) and 1121(d) of the Bankruptcy Code and the prior Orders of the Bankruptcy Court. The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized by the Debtor from continued operation of the Debtor's business as well as from existing cash deposits and cash resources of the Debtor. To the extent necessary, the balloon payment to PNC Bank, National Association ("PNC"), as required by the Plan, may be paid from the proceeds of the refinancing of the underlying mortgage indebtedness due to PNC. For a further discussion of the Plan, the reader's

attention is directed to the Disclosure Statement filed by the Debtor in connection with this Plan.

**ARTICLE I**

**DEFINITIONS**

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1**   **Adequate Protection Payments:**   Monthly payments made by the Debtor to PNC during the course of this Chapter 11 Case pursuant to Orders entered by the Bankruptcy Court authorizing the Debtor's use of cash and cash equivalents that serve as collateral to PNC.

**1.2**   **Administrative Expense:**   A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.3**   **Allowed Claim:**   A "Claim" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent in the Debtor's bankruptcy schedules filed in this Chapter 11 case, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

**1.4**   **Allowed Interest:**   An "Interest" (as defined below) (i) proof of which has been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders

-2-

identified in the Debtor's bankruptcy schedules which have been filed with the Bankruptcy Court in this Chapter 11 case; and (iii) in the event of either (i) or (ii), as to which no objection to the allowance thereof has been filed within any applicable period of time fixed by an Order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order of the Bankruptcy Court.

**1.5**   **Bankruptcy Code:**   Title 11 of the United States Code, Section 101 *et seq.*, as amended.

**1.6**   **Bankruptcy Court:**   The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.7**   **Bankruptcy Rules:**   The Federal Rules of Bankruptcy Procedure.

**1.8**   **Chapter 11:**   Chapter 11 of the Bankruptcy Code.

**1.9**   **Chapter 11 Case:**   This case filed by the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.10**   **Claim:**   The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.11**   **Confirmation:**   The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.12**   **Debtor:** Colts Run, L.L.C.

**1.13**   **Debtor's Estate:**   All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.14**   **Debtor in Possession:** Colts Run, L.L.C.

**1.15**   **Effective Date:**   Thirty (30) days following the date on which the Order confirming this Plan becomes a Final Order.

**1.16** <u>**Final Confirmation Order**</u>: Final Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.17** <u>**Final Order:**</u> (i) An order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

**1.18** <u>**Interest:**</u> Any equity interest held by any general or limited partner of the Debtor.

**1.19** <u>**Month:**</u> A calendar month, including the month in which a date or event occurs.

**1.20** <u>**Colts Run:**</u> Colts Run, L.L.C.

**1.21** <u>**Plan:**</u> This Plan of Reorganization including any amendments or modifications thereto.

**1.22** <u>**Pro-rata:**</u> With respect to any distribution on account of any Claim or matter, in the same proportion as the amount of such Claim or matter bears to the aggregate amount of all Claims or matters of its class.

**1.23** <u>**Reorganized Debtor**</u>: Colts Run, L.L.C.

**1.24   Unclassified Claims**: Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined in this Plan, the words and phrases used herein shall have the meanings ascribed to them in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II

## UNCLASSIFIED CLAIMS

The following Unclassified Claims exist under the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code:

**2.1   Administrative Claims:**   Administrative Claims shall consist of Allowed Claims for Administrative Expenses as well as claims arising under Sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code.[1]

**2.2   Tax Claims:**  The Allowed Claims, if any, of the Internal Revenue Service ("IRS"), the Kentucky Department of Revenue ("KDR"), and any other federal, state or local taxing authority which is entitled to priority under Section 507(a)(8) of the Bankruptcy Code ("Tax Claims").

---

[1]  Since the Debtor's Chapter 11 Case was commenced as a voluntary proceeding, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

## ARTICLE III
## CLASSIFICATION OF CLAIMS[2]
## AND INTERESTS

**3.1** **Class 1:** The Allowed Secured Claims of PNC pursuant to its mortgage notes which are secured by first and second mortgages on the real property owned by the Debtor.

**3.2** **Class 2:** The Allowed Secured Claims, if any, of the holders of pre-petition Real Estate Tax Claims secured by a statutory lien on any real property owned by the Debtor.

**3.3** **Class 3:** The Allowed Claims of tenants at Colts Run Apartments ("Tenants") including claims for security deposits delivered to the Debtor.

**3.4** **Class 4:** The Allowed Claims of other secured creditors ("Other Secured Creditors").

**3.5** **Class 5:** The Allowed Claims of general unsecured creditors, exclusive of the Allowed Claims in Classes 3 and 4.

**3.6** **Class 6:** The Allowed Interests of the members of the Debtor.

## ARTICLE IV

## PAYMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

Under the terms of the Plan, Unclassified Claims are unimpaired and shall be paid as follows:

**4.1** **Administrative Claims:** Except as expressly provided herein and except as may be agreed to by the holder of each Allowed Administrative Claim, holders of Allowed Administrative Claims shall be paid on the Effective Date in cash in accordance

---

[2] No claims of the types specified in Sections 507(a)(1) and 507(a)(4) through 507(a)(6) of the Bankruptcy Code exist in this Chapter 11 Case.

with Section 1129(a)(9)(A) of the Bankruptcy Code as follows, unless the holder of an

Administrative Claim agrees to a different treatment:

> Each holder of an Allowed Administrative Claim of the kinds specified in Section 507(a)(2) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, on the Effective Date except that post-petition trade creditors of the Debtor will be paid according to the terms under which the debt was incurred; and provided, however, that all Administrative Claims with respect to the payment of any professional person shall remain subject to and be paid in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules and the Final Order of the Bankruptcy Court.

**4.2**   **Tax Claims:** The Allowed Tax Claims, if any, of the IRS and KDR shall be

paid in full, inclusive of allowed interest as provided by applicable federal or state

statutes, in cash on the Effective Date, unless the holder thereof agrees to a different

treatment.  This treatment of Allowed Tax Claims is intended to comply with the

requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.[3]


## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS NOT
## IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 2, 3 and 4 and Allowed

Interests in Class 6 are not impaired.

**5.1**   **Class 2**: In full satisfaction, settlement, release, and discharge

of and in exchange for each and every Class 2 Allowed Real Estate Tax Claim, each

holder of an  Allowed Class 2 Claim shall receive and/or retain:

> A.   Its lien on the real property owned by the Debtor, with the same validity, enforceability, perfection and priority as it had on the Petition Date and as may have been

---

[3]The Debtor believes that there are no Allowed Tax Claims.

acquired during the course of this Chapter 11 Case pursuant to Orders entered by the Bankruptcy Court, until the Allowed Class 2 Claims are paid in full; and,

B.   Payment of the entire unpaid balance of the Allowed Class 2 Claim, including any accrued statutory interest, shall be paid on the Effective Date.[4]

**5.1   Class 3**: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 3, each holder of an Allowed Tenant Claim shall be paid in full in cash as required by the underlying lease between the Debtor and the Class 3 Claim holder. The Debtor shall timely perform all obligations due from it under the terms of the underlying leases.

**5.3   Class 4:**  In full satisfaction, settlement, release and discharge of and in exchange for each and every Allowed Claim in Class 4, each holder of an Allowed Class 4 Claim shall be paid in full in cash as required by the terms and conditions of the underlying contract between the Debtor and the holder of the Allowed Class 4 Claim. To the extent a monetary default exists under any such contract, such monetary default shall be cured on the Effective Date by the payment of cash by the Debtor to the holder of the Allowed Class 4 Claim in the amount of such monetary default.

**5.4   Class 6:**  The members of the Debtor shall retain their Interests in the Debtor after Confirmation of the Plan.

## ARTICLE VI

### TREATMENT OF CLAIMS AND INTERESTS
### IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 1 and 5 are impaired.

---

[4] The Debtor believes that there are no Allowed Class 2 Claims.

**6.1**    **Class 1**:    PNC is the holder of the Allowed Class 1 Claim.  The Allowed

Class 1 Claim is equal to the balance due to PNC under its notes and mortgages.  The

Allowed Class 1 Claim is impaired under the Plan and shall be paid as follows:

A.    **Application of Adequate Protection Payments:**    Adequate

Protection Payments received by PNC during the course of this Chapter 11 Case shall

be applied in the following priority:

1.    Payment of interest due to PNC on the principal indebtedness due at the non default interest rate provided for in its loan documents;

2.    Payment of any pre-petition unpaid arrearage due to PNC under its loan documents;

3.    Payment of PNC's professional fees and costs to the extent allowable under its loan documents, and approved by the Court;[5] and,

4.    Payment of the balance, if any, to reduce the principal balance due on the Allowed Class 1 Claim.

5.    To the extent that the Adequate Protection Payments received by PNC are not sufficient to satisfy amounts due under subparagraphs **A1, A2 or A3** above, any deficiency shall be added to the unpaid principal balance due PNC, and shall be paid in accordance with subparagraph **B3** below:

B.    **Treatment:** In full satisfaction, settlement, release, and discharge

of and in exchange for the Allowed Claims in Class 1:

1.    The holder of the Allowed Class 1 Claims shall receive and/or retain:

a.    Its liens on the real and personal property owned by the Debtor, to the same extent and with the same validity, enforceability, perfection and priority as it had on the Petition Date and as may have been acquired by PNC during the course of this Chapter 11 Case pursuant to Orders entered

---

[5]The reasonable fees and expenses of the Bank's attorneys and other professionals (to the extent allowed) incurred in connection with the consummation, administration, and enforcement of the Plan shall be considered additional Class 1 Claims.

by the Bankruptcy Court, until the Allowed Class 1 Claims are paid in full;

b.      Interest on its Allowed Class 1 Claim until fully paid at the pre-petition, non-default contract rate contained in its loan documents, payable in 59 monthly installments on the 15th day of each month; and,

c.      Payment of the unpaid balance of the Allowed Class 1 Claim due it on the fifth (5th) anniversary of the Effective Date;

2.      Payments shall commence on the 15th day of the month following the Effective Date;

3.      To the extent not otherwise modified by the terms of this Plan, the parties shall continue to be bound by and shall perform the terms and conditions contained in the loan documents between PNC and the Debtor; and,

4.      Payment of the unpaid amount of the Allowed Class 1 Claim may be made in whole or in part, from time to time, without penalty or charge at the sole and exclusive option of the Debtor.

C.      **Guaranty of Indebtedness:** The existing guaranty(s) of Ivan

Djurin, to the extent of its validity, shall remain valid, enforceable and in full force,

unaffected by this Plan except to the extent of the modification of the Allowed Class 1

Claims provided herein.

D.      **Other Provisions**:

1.      The Debtor, at its sole and exclusive option, may accelerate payments to the holder of the Allowed Class 1 Claims. All unaccrued interest shall be deemed waived and no penalty shall be chargeable to the Debtor in the event that the Debtor elects to accelerate payments.

2.      Upon completion of the payments under the Plan to PNC on account of the Allowed Class 1 Claims, all of the liens, security interests and Claims of PNC shall be deemed released and discharged.  To the extent requested by the Debtor, once the Allowed Class 1 Claims are paid in full as required by the Plan, PNC shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  Any right of any party under Section 506(c) of the Bankruptcy Code as against the holder of the Allowed Class 1 Claims or its collateral shall be preserved and shall survive Confirmation of the Plan.

3.      This Plan shall supersede and replace the terms and conditions of

the loan documents establishing the Allowed Class 1 Claims to the extent the loan documents are inconsistent with this Plan.

4.     The holder of the Allowed Class 1 Claims shall only be entitled to the reimbursement of reasonable attorneys' and professionals' fees and costs arising after Confirmation in the event that the Debtor is in default of the payments required under the Plan on account of the Allowed Class 1 Claims (which default remains uncured after ten (10) days written notice to the Debtor and Debtor's Counsel from the holder of the Allowed Class 1 Claims as required by this Plan) and in the further event that the underlying note provides for such fees.

5.     In the event of a default by the Debtor under the Plan with respect to the treatment of the Allowed Class 1 Claims, the holder of the Allowed Class 1 Claims shall provide written notice of such default as required by the underlying loan documents and to the Debtor by transmitting such default notice by first class mail and telefax to the Debtor at its place of business to the attention of Ivan Djurin, and in the same manner to Debtor's Counsel, David K. Welch, Crane, Heyman, Simon, Welch & Clar, 135 S. LaSalle St., Suite 3705, Chicago, Illinois 60603 ("Default Notice").

**6.2**   **Class 5**:     Class 5 Claims are impaired under the Plan.  In full

satisfaction, settlement, release, and discharge of and in exchange for each and every

Allowed Class 5 Claim, each holder of an Allowed Class 5 Claim shall receive 100% of

the allowed amount of such Class 5 Claims plus interest as follows:

A.     Interest on its unpaid indebtedness until fully paid at five (5%) percent per annum;

B.     Payment of the principal balance and accrued interest shall be paid in quarterly installments over a two (2) year period, commencing 90 days after the Effective Date, and continuing each quarter thereafter until fully paid; and,

C.     Payment of the unpaid indebtedness may be made in whole or in part, from time to time, without penalty or charge at the sole and exclusive option of the Debtor.

## ARTICLE VII

## IMPLEMENTATION OF PLAN

**7.1**   Upon Confirmation, the Debtor shall be vested with its assets, subject only

to the terms and conditions of this Plan.  The Debtor shall be entitled to continue to

operate its business and manage its business and financial affairs without further Order of this Court as set forth in the Plan.

**7.2**     Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under this Plan as permitted by the Plan.  This injunction shall remain in full force and effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan.

**7.3**     Management of the Debtor will remain unchanged after Confirmation of the Plan.  The Debtor shall be the disbursing agent for the payments required under the Plan.

**7.4**     After Confirmation of the Plan, the Debtor will operate its business in the ordinary course.  Payments to creditors pursuant to the Plan will be made from funds realized from continued business operations and from existing cash deposits.   If necessary, the Debtor may borrow funds sufficient to pay the balance of the Allowed Claims in Class 1 as required by the Plan, or on such earlier date as the Debtor may elect at its sole and exclusive option.  To the extent necessary, Ivan Djurin will provide a personal guarantee of any loans from any lender acquired by the Debtor to pay for any refinancing of any of the indebtedness represented by the Allowed Claims in Class 1 of the Plan.

**7.5**    The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty.

**7.6**    The Plan is self-executing.  Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim.  The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property.  Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

**7.7**    The Debtor shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation they deem appropriate.  The Bankruptcy Court shall retain jurisdiction for such litigation.

**7.8**    The holder of Allowed Claims in Class 1 may be asserting various Claims for reimbursement of fees and expenses it incurred or paid to professionals retained in this Chapter 11 Case.  To the extent that any creditor (including the holder of the Allowed Class 1 Claim) is asserting a Claim for reimbursement from the Debtor for professionals retained in this Chapter 11 case which Claim remains unresolved, such creditors shall file such Claim with the Clerk of the Bankruptcy Court with a full and complete itemization of services rendered and expenses incurred by each such professional within forty-five (45) days of Confirmation of this Plan.  The Debtor shall have the right to object to any such Claim by the deadline set in Article XIV, Section 14.1 of this Plan and the Bankruptcy Court expressly reserves jurisdiction to hear any matters relating thereto.  In the event that any creditor fails to timely file a Claim as set forth herein, such Claim shall be deemed waived, released and discharged, such

creditor shall be barred from asserting such Claim and such creditor shall be entitled to no distribution or payment on account of such Claim.

**7.9**     North Street Properties, Inc. shall continue to serve as the agent of the Debtor with respect to the management and leasing of Colts Run Apartments and shall be paid by the Debtor pursuant to the terms and conditions of the Debtor's agreement(s) with North Street Properties, Inc.

## ARTICLE VIII

## EXECUTORY CONTRACTS

**8.1**     All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned, rejected or otherwise terminated by the Debtor shall be deemed assumed as of Confirmation of this Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code.

**8.2**     Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to this Plan or otherwise must be filed on or within thirty (30) days following Confirmation.  Further, with respect to Claims for default relating to any unexpired lease or executory contract that is deemed assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following Confirmation.  Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 5 Claims.  Allowed Claims for default emanating from the assumption of unexpired leases and executory contracts will be treated as Administrative Claims.  Any person failing to file such a

Claim within the time provided herein shall be forever barred from asserting such Claim

and shall not receive any distribution under this Plan.

**8.3**    The provisions set forth herein shall be equally applicable to executory

contracts and unexpired leases of real and personal property.


## ARTICLE IX

## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

**9.1**    The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i)

hear and determine applications for fees and allowances for professional persons; (ii)

supervise the implementation of this Plan; (iii) hear and determine objections to Claims

filed in this Chapter 11 Case; (iv) hear and determine applications for the assumption,

assignment and/or rejection of executory contracts; (v) hear and determine all

adversary proceedings or contested matters whether filed before or after Confirmation;

(vi) resolve disputes regarding interpretation of this Plan; (vii) allow Administrative

Claims; (viii) enter Orders to further consummation of the Plan; (ix) approve

modification of the Plan upon motions brought before the Bankruptcy Court in

accordance with Section 1127 of the Bankruptcy Code; (x) hear and determine all

applications and motions pending before the Bankruptcy Court on the date of

Confirmation or such other matters as are commenced after Confirmation of the Plan;

(xi) enter any order, including injunctions, necessary to enforce title, rights and powers

of the Debtor, and to impose such limitations, restrictions, terms and conditions of such

title, rights and powers as may be necessary; (xii) enforce terms of Plan; (xiii) hear and

determine all matters brought by the Debtor under Article VII, Section 7.7 of this Plan;

(xiv) enter an Order concluding and terminating this Chapter 11 Case; and (xv) hear

and determine any and all matters brought before the Bankruptcy Court by the Debtor

after Confirmation.

## ARTICLE X

## INVALIDATION OF LIENS AND DISCHARGE

**10.1**    The provisions of the confirmed Plan shall bind all creditors and other

parties in interest, whether or not such persons accept the Plan.  The distributions

provided under the Plan shall be in exchange for and in complete satisfaction and

release of all liens and Claims against any of the assets or properties of the Debtor and

Debtor's Estate.  Unless otherwise specifically provided to the contrary herein or in the

Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded

from asserting any lien or Claim against the Debtor or its property.

**10.2**    Except as otherwise provided in the Plan or the Confirmation Order, the

Confirmation of the Plan shall, as of the Effective Date: discharge the Debtor from all

Claims, demands, liabilities, other debts and Interests that arose on or before the

Petition Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of

the Bankruptcy Code, whether or not (A) a proof of Claim or Interest based on such

debt or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy

Code, (B) a Claim or Interest based on such debt or Interest is allowed pursuant to

Section 502 of the Bankruptcy Code, or (C) the holder of a Claim or Interest based on

such debt or Interest has accepted the Plan.   This provision of the Plan is intended to

include the full breadth of the discharge provided for and permitted under Section 1141

of the Bankruptcy Code.

## ARTICLE XI

## INTEREST AND PENALTIES

**11.1**   Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after April 23, 2010, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE XII

### CONFIRMATION OF PLAN UNDER
### SECTION 1129(b) OF THE BANKRUPTCY CODE

**12.1**   To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

## ARTICLE XIII

## UNCLAIMED PROPERTY

**13.1**   In the event that any distribution made to a claimant by the Debtor under this Plan remains unclaimed sixty (60) days after such distribution is made, this distribution shall become property of the Debtor and shall not be recouped by any claimant in subsequent distributions.  Once the distribution becomes "unclaimed" under this provision of the Plan, the claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE XIV

## CLAIMS OBJECTIONS

**14.1**   Except as otherwise ordered by the Bankruptcy Court, the Debtor shall file

any and all objections to the allowance of Claims or Interests on or within one hundred

and twenty (120) days of Confirmation of this Plan unless extended by Order of the

Bankruptcy Court.  Cause shall not be a requirement for an extension of this deadline.

## ARTICLE XV

## DISPUTED CLAIMS

**15.1**   No distribution shall be made to the holders of disputed Claims until the

dispute is resolved either by agreement or by Order of the Bankruptcy Court.

Distributions to the holders of Allowed Claims shall not be held back pending resolution

of disputed Claims.  However, in the event a distribution is made to the holders of

Allowed Claims in a given Class of Claims under the Plan before all disputed Claims in

such Class have been resolved, sufficient funds shall be held back to pay the pro rata

share due the holders of disputed Claims in such Class in the event the dispute is

resolved against the Debtor.

## ARTICLE XVI

## RETENTION OF CAUSES OF ACTION

**16.1**   The Debtor shall retain any and all claims and causes of action it has

against third parties.  Such claims and causes of action shall survive and be unaffected

by Confirmation of this Plan. Any funds realized from such retained claims and causes

of action shall be property of the Debtor and shall be paid to the holders of Allowed

Claims only to the extent expressly required by the Plan.

## ARTICLE XVII

## GENERAL PROVISIONS

**17.1    Rules of Construction.**  The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

**17.2    Definitions.**  A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**17.3    Amendment and Modification.**  The Debtor may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**17.4    Severability.**  Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**17.5    Successors and Assigns.**  The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of any such person or entity.

**17.6    Headings.**  The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**17.7    Effect of Appeals.**  Unless the Confirmation Order is stayed pending appeal, the Debtor may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**17.8    Debtor's Corporate Existence.**  The Debtor's corporate existence shall survive and be unaffected by Confirmation of this Plan except to the extent provided in the Plan.

**17.9    Computation of Time**.  Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**17.10    Insurance Preservation**.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

**17.11    Assignment of Licenses and Insurance**.  Any and all licenses of the Debtor and any and all insurance policies, contracts, rights and coverages shall be deemed assigned to and for the benefit of the Debtor upon Confirmation of the Plan

**17.12    Terms Binding**.  On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtor, all creditors  and shareholders and all other entities that are affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of the Final Confirmation Order.

**17.13    Inconsistencies**.  In the event that there is any inconsistency between the Plan and Disclosure Statement, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

**17.14    Compliance With Applicable Law**.  It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all

applicable laws and any rules and regulations promulgated thereunder.  If the Debtor

concludes that the Plan may not comply with applicable law, then in such event the

Debtor intends to amend the Plan in such respect as it deems necessary to bring the

Plan into compliance therewith.

**17.15 Tax Consequences**.  At this time, it is uncertain as to what tax

consequences, if any, may exist under the Plan with respect to the Debtor.


Respectfully submitted,

COLTS RUN, L.L.C., a limited liability
company, Debtor and Debtor in Possession

By: /s/David K. Welch_____
      One of Its Attorneys

**DEBTOR'S COUNSEL**:
David K. Welch, Esq.
(Atty. No. 06183621)
Arthur G. Simon, Esq.
(Atty. No. 03124481)
Scott R. Clar, Esq.
(Atty. No. 06183741)
Jeffrey C. Dan, Esq.
(Atty. No. 06242750)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777
FAX: (312) 641-7114
W:\GRACE\Colts\Plan.wpd